SOUTHERN RAILWAY COMPANY *v.* ST. LOUIS HAY & GRAIN COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 104. Argued March 8, 9, 1909.—Decided June 1, 1909.

A carrier which is at service and expense in stopping goods in transit for inspection and reloading for the benefit of the shipper is entitled to compensation in addition to the actual expense incurred.

Where the Interstate Commerce Commission has held, and its order has been affirmed by the Circuit Court and Circuit Court of Appeals, that

a carrier cannot charge for a service rendered at the request and for the benefit of the shipper any amount in excess of the actual expense incurred, and fixed a rate less than this court considers reasonable, this court cannot, where the testimony has not been preserved in the record, fix a fair and reasonable charge, but will reverse the judgments of both courts and remand the case to the former court with instructions to send the matter back to the commission for further investigation and report.

153 Fed. Rep. 728, reversed.

THIS was an action brought by the defendant in error on an award of the Interstate Commerce Commission. In a general way, the facts are as follows: The St. Louis Hay & Grain Company is a corporation organized under the laws of the State of Illinois, with its principal office at St. Louis, Mo., a dealer in hay, in the course of which business it operates two warehouses in East St. Louis, Ill. The railway company is the owner and operating a line of railway extending from East St. Louis through the Eastern District of Illinois to points in Southern States, to which the hay and grain company is engaged in shipping hay. The company buys some hay at its warehouses, brought in from the adjacent country, but a large portion of it is bought at points to the north and west. Some of the hay thus purchased is sent directly through East St. Louis in the cars in which it was originally loaded, but much of it is taken to its warehouses, there unloaded, inspected and reloaded for the Southern markets. This is called a reconsignment. Taking these cars which are to be reconsigned to the hay and grain company's warehouses and taking the reloaded cars therefrom involves the use of the cars for a longer time, and there is some expense in hauling the cars. For this the railway company had been in the habit of charging $4 or $5 a car, equivalent on the average loading to two cents per hundred pounds. On an application by the company to the Interstate Commerce Commission it was held, on May 15, 1905 (11 I. C. C. Rep. 90), that such charge was excessive and unreasonable, and that one-half thereof a car was sufficient. Upon that basis it awarded to the hay and grain company the sum

of $1,572.08, one-half the sum paid theretofore by it to the railway company. This sum not being paid, the hay and grain company, on January 23, 1906, filed its petition in the United States Circuit Court for the Eastern District of Illinois to recover the amount thus awarded, with interest, and also for an attorney's fee. A trial resulted on June 25, 1906, in a judgment in favor of the hay and grain company for the amount awarded by the commission, with interest thereon, and also for $350 as an attorney's fee. 149 Fed. Rep. 609. On error to the United States Circuit Court of Appeals for the Seventh Circuit the judgment of the Circuit Court was on April 16, 1907, affirmed (82 C. C. A. 614); whereupon the case was brought here on error.

Mr. *Edward C. Kramer* and Mr. *Claudian B. Northrop* for plaintiff in error.

Mr. *P. J. Farrell* and Mr. *L. O. Whitnel* for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

This case rests on the findings and conclusion of the Interstate Commerce Commission, for while on the trial in the Circuit Court testimony in addition to that which was produced before the commission was received, yet the finding of the court was that "from all the evidence heard and adduced on the trial of this cause in this court, the court finds that the said findings of fact by the said Interstate Commerce Commission are supported and justified by the said evidence, and it is ordered that the said findings of fact as above recited and set out be and the same are adopted as the special findings of fact of the court and that the same be set out in the records of this court accordingly."

Nothing was of course added in the Circuit Court of Appeals which merely affirmed the judgment of the Circuit Court. We

turn, therefore, to the proceedings before the commission, and there is this finding of fact:

"While the question is perplexing, and while we may not have apprehended all the material points involved, we are strongly of the opinion and find that, taking everything into account, the average additional expense to southern lines in case of reconsigned hay will not exceed that of direct through shipments by more than from $2.00 to $2.50 per car, which is equivalent upon the average loading of hay to about one cent per hundred pounds."

The conclusions so far as material to this controversy are thus stated:

"The stopping of a commodity in transit for the purpose of treatment or reconsignment is in the nature of special privilege which the carrier may concede, but which the shipper cannot, in the present state of the law, demand as a matter of lawful right. *Diamond Mills* v. *Boston & M. R. R. Co.*, 9 I. C. C. Rep. 311. Carriers may not, however, discriminate between markets nor between individuals in the granting of such privileges. If this right is given to the markets which compete with East St. Louis in this business by these defendants, it should, *prima facie*, also be granted to that market. If these defendants allow this privilege to the competitors of the complainant at East St. Louis, they should accord it the same privilege.

"The case shows, although not very clearly, that the defendants concede this privilege at other competing markets, and that a track buyer in East St. Louis itself can send along a carload, which he purchases but does not unload, without the payment of this charge. It further shows, however, that the right to unload this hay and handle it at its warehouse is of value to the complainant, and that it costs these defendants something to accord that privilege.

"Under these circumstances, we think it is not an undue preference against this complainant if the railroads charge for the privilege what it actually costs them, but we do not think

that they should charge more than the actual cost. The case finds that the fair average cost when the complainant handles its hay through its warehouse over and above the cost of a through shipment is from $2.00 to $2.50 per car, or approximately one cent per hundred pounds. We think, therefore, that this reconsignment charge ought not to exceed the proportional rate by more than one cent, and that the complainant is entitled to recover whatever it has paid in addition to that sum."

It thus appears that the commission was of the opinion that the shipper could not demand as a matter of right the stopping of the hay for the purposes of treatment or reconsignment unless the same privilege was given to other shippers, and that, in granting this privilege, the railway company could only charge the shipper the actual cost. But this privilege involved to the railway company the cost of hauling to and from the warehouses and the use of the car for some hours, perhaps days. The commission found that $2 or $2.50 per car, or approximately one cent per hundred pounds, was the actual cost to the railway company.

We are unable to concur with the commission. If the stopping for inspection and reloading is of some benefit to the shipper and involves some service by and expense to the railway company, we do not think that the latter is limited to the actual cost of that privilege. It is justified in receiving some compensation in addition thereto. A carrier may be under no obligations to furnish sleeping or other accommodations to its passengers, but if it does so it is not limited in its charges to the mere cost, but may rightfully make a reasonable profit out of that which it does furnish. Especially is this true when, as here, the privilege is in no sense a part of the transportation, but outside thereof. Whether the conclusion of the commission that the carrier is under no obligations to permit the interruption of the transit is right, and whether it is or is not under such obligation, it is entitled to receive some compensation beyond the mere cost for that which it does.

We have been particular to copy the exact language used by the commission, for in another case between the same plaintiff and other railroad companies, involving the charges in a case of reconsignment of hay, decided on December 20 of the same year (*St. Louis Hay & Grain Company* v. *The Illinois Central Railroad Company et al.*, 11 I. C. C. 486), the commission made an order dismissing the complaint. It is true that the facts are not precisely like those in this case, but at the same time the difference in the conclusions of the commission is such as seem to suggest that perhaps on further examination the commission had come to a different conclusion.

The testimony taken before the commission is not preserved in the record, hence it would be impossible, even if proper with all the testimony before us, to fix the amount which would be a fair and reasonable charge. All we can do is to reverse the judgments of the Circuit Court and Circuit Court of Appeals and remand the case to the former court with instructions to send the matter back to the Commerce Commission for further investigation and report.

                                                       *Reversed.*