**FOLKWAYS BROADCASTING COMPA-
NY, Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**

**F. L. Crowder t/a Harriman Broadcasting
Co., Intervenor.**

**No. 19971.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 6, 1967.

Decided April 26, 1967.

Petition for Rehearing En Banc
Denied May 22, 1967.

Mr. John B. Kenkel, Washington, D.
C., with whom Mr. Arthur H. Schroeder,
Washington, D. C., was on the pleadings,
for petitioner.

Mr. John H. Conlin, Associate Gen.
Counsel, with whom Messrs. Henry Gel-
ler, Gen. Counsel, and William L. Fish-
man, Counsel, F. C. C., were on the plead-
ings, for respondent.

Mr. Donald E. Bilger, Washington, D.
C., was on the pleading for intervenor.

Before BAZELON, Chief Judge, and
FAHY* and TAMM, Circuit Judges.

* Circuit Judge Fahy became Senior Circuit Judge on April 13, 1967.

PER CURIAM.

Petitioner Folkways Broadcasting Company, licensee of radio station WHBT in Harriman, Tennessee, seeks a writ in the nature of mandamus. On January, 14, 1966, the Federal Communications Commission granted, without hearing, the application of F. L. Crowder, trading as Harriman Broadcasting Company, for a radio station in Harriman. The Commission simultaneously issued a construction permit to Crowder and denied Folkways' petition to deny the Crowder application. Without seeking a stay from either the Commission or this court, Folkways brought a review proceeding in this court alleging that the issues raised by its petition to deny could not be resolved without an evidentiary hearing prior to the award of the license. We agreed, by split decision, and remanded the case for an evidentiary hearing to determine whether Crowder's broadcasting history established that he trafficked in station licenses and whether the conditions in Harriman were such that the addition of Crowder's radio station would have a serious adverse effect on overall service in the community. See Folkways Broadcasting Co. v. Federal Communications Commission, 126 U.S. App.D.C. ——, 375 F.2d 299 (1967).

On the day our mandate issued, Folkways petitioned the Commission to re-move Crowder from the air pending the further proceedings. The Commission refused. Instead, it issued to Crowder a temporary grant to continue operations, with a caveat that he would be ordered to stop upon a showing by Folkways of substantial adverse economic impact. The Commission also ordered an expedited hearing. Folkways thereupon brought this mandamus proceeding to compel revocation of Crowder's temporary authority.

We conclude that Crowder's temporary operating authority is inconsistent with our mandate and with the Commission's statutory responsibilities.

■ Our earlier decision in this case in effect returned Crowder's application to a pre-grant status which required evidentiary proceedings for the determination of the public interest questions that had been raised. 47 U.S.C. § 309 (1964). With certain limited exceptions not invoked by the Commission in this case, there is no provision in the Communications Act for temporary operating authority pending such proceedings. See 47 U.S.C. §§ 308(a), 309(f) (1964). The Commission, however, claims the inherent power to allow an applicant to operate pending the proceedings ordered by the court if the public interest so requires.[1]

1. The Commission relies on instances in which this court remanded a case for further proceedings and explicitly allowed it to decide whether or not to return the parties to their pre-grant status. See, e. g., Television Corporation of Michigan, Inc. v. Federal Communications Commission, 111 U.S.App.D.C. 101, 105, 294 F. 2d 730, 734 (1961); Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 34, 269 F.2d 221, 225 (1959); American Broadcasting Co. v. Federal Communications Commission, 89 U.S.App.D.C. 298, 307, 191 F.2d 492, 502 (1951). It contends that these decisions constitute recognition of the Commission's inherent discretionary power. Most of these cases precede the significant amendments to the Communications Act discussed *infra* and involve different public interest questions. And courts, with their traditional powers to fashion remedies, may have a broad range of authority to adjust relief pending remand proceedings. *Cf.*, Ford Motor Co. v. Nat'l Labor Relations Board, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1938); Braniff Airways, Inc. v. Civil Aeronautics Board, —— U.S.App.D.C. ——, 379 F.2d 453, decided April 12, 1957. Since we deal here with unilateral FCC action, we need not assess the scope of the court's remedial powers under the Communications Act.

The Commission also relies on Wometco Enterprises, Inc. v. Federal Communications Commission, 114 U.S.App.D.C. 261, 314 F.2d 266, petition for writ of mandamus denied, October 1, 1963, where we refused to issue mandamus to compel the Commission to return the parties to their pre-grant status pending remand proceedings. Since many equitable considerations affect whether mandamus

[redacted] We think this claim conflicts with the Communications Act and with the legislative history. In 1960, Congress redesigned the grant procedure and sought, *inter alia,* to make it "absolutely clear that the application will be designated for a hearing before a grant in any case where a substantial and material question of fact is presented and not disposed of." See H.R.Rep.No.1800, 86th Cong., 2d Sess., (1960), p. 12, U.S. Code Cong. & Admin. News 1960, p. 3516. Before the 1960 amendments, protests were filed after the grant was made. The Commission was authorized to allow the interim operation of facilities pending any evidentiary hearing made necessary by the protests, if it found "affirmatively * * * that the public interest requires that the grant remain in effect." 47 U.S.C. § 309(c) (1958). The Act now allows a limited temporary grant only when there are "extraordinary circumstances requiring emergency operations in the public interest." 47 U.S.C. § 309(f) (1964). See also 47 U.S.C. § 308(a) (1964).

[redacted] Congressional policy clearly bars any use of the air waves by those whose public interest qualifications have not been established. The narrowness of the statutory exceptions indicates that the Commission's findings here would not, in any event, obviate the Congressional policy. Except for the benign assertion made by Commission counsel in the opposition filed with us that "it is of course axiomatic that the continued operation of an existing service is in the public interest," neither the Commission nor its counsel have advanced any reason for finding that Harriman needs Crowder's station during this period. Instead, the Commission has required Folkways to show *first* that it is being harmed before it will consider removing Crowder. The absence of a strong public interest finding is telling in light of the serious questions regarding Crowder's character qualifications.

We realize that Crowder's removal from the air will impose a hardship upon him. But we find no basis for granting him temporary operating authority pending the hearing we ordered.

We are certain that in light of this opinion, the Commission will promptly rescind its grant of temporary authority. Accordingly, in lieu of the writ prayed for, we direct our Clerk to transmit forthwith a certified copy of this opinion to the Commission.

So ordered.

FAHY, Senior Circuit Judge (dissenting).

Since Folkways failed to apply to the Commission for a stay of the Commission's order and, perhaps more importantly, failed to apply to this court for a stay pending the appeal, it seems to me the extraordinary relief it now seeks by writ of mandamus to correct the Commission's action, assuming that action to be erroneous, should not be granted.

[redacted]

will issue, it is clear that the Commission may not rely upon our per curiam order, issued without opinion, to support its claim that it has the legal authority to so act.