NATIVE ECOSYSTEMS COUNCIL; Alliance for the Wild Rockies Wildwest Institute, Plaintiffs—Appellants,

v.

Abigail KIMBELL, in her official capacity as Northern Region Regional Forester; Thomas Reilly, in his official capacity as Supervisor of the Beaverhead Deerlodge National Forest United States Forest Service, an agency of the U.S. Department of Agriculture, Defendants—Appellees,

Butte–Silver Bow County, a municipal corporation and political subdivision of the State of Montana, Defendant–intervenor—Appellee.

No. 07–35360.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 2008.

Filed Dec. 19, 2008.

538

Thomas J. Woodbury, Esquire, Forest Defense, P.C., Missoula, MT, for Plaintiffs–Appellants.

John E. Arbab, Esquire, DOJ–U.S. Department of Justice, Washington, DC, Mark Steger Smith, Esquire, Assistant U.S., USBI–Office of the U.S. Attorney, Billings, MT, for Defendants–Appellees.

Robert M. McCarthy, Esquire, Butte, MT, Julie A. Weis, Esquire, Haglund Kelly Horngren Jones & Wilder, LLP, Portland, OR, for Defendant–intervenor–Appellee.

Before: SILVERMAN, McKEOWN, and BERZON, Circuit Judges.

## MEMORANDUM *

Native Ecosystems Council ("Native Ecosystems") appeals the district court's grant of summary judgment in favor of the United States Forest Service and the district court's decision to dissolve its injunction of the Basin Creek Hazardous Fuels Reduction Project ("Project") at the Beaverhead–Deerlodge National Forest. The challenge rests in large part on the Forest Plan for this area. For the reasons stated below, we affirm the district court's decisions.

I. The District Court Did Not Abuse its Discretion by Enjoining the Project and Later Dissolving the Injunction

■ Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, a court "may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Sierra Pac. Indus. v. Lyng,* 866 F.2d 1099, 1111 (9th Cir.1989) (quoting *Ford Motor Co. v. NLRB,* 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939)). The district court's choice of equitable relief is within its discretion. *See Sierra Pac. Indus.,* 866 F.2d at 1112. Under the circumstances of this case, the district court's decision not to automatically vacate the Record of Decision ("ROD") upon finding it was legally deficient as to the soils analysis was not an abuse of discretion. Remanding the soils issue to the Forest Service, while enjoining the Project until the Forest Service "conduct[ed] the required analysis of the Project's potential impact on soil productivity" and demonstrated "that [it] [had] complied with environmental laws," did not exceed the court's

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

discretion to craft a remedy taking into account the safety and property interests at stake in the Project.

Nor did the district court prejudice Native Ecosystem's procedural rights. The district court kept the injunction in place until the Forest Service completed the comment and response process used to supplement a Final Environmental Impact Statement ("FEIS"). *See* 40 C.F.R. § 1502.9(c)(4). Significantly, Native Ecosystems did not have the right to appeal the Forest Service's determination that a new ROD was unnecessary following supplementation of the FEIS. *See* 36 C.F.R. § 215.12(b). To the extent there is any other claim of procedural error, the error was harmless.

The district court likewise did not abuse its discretion by dissolving the injunction after completion of the Soils Report. The Soils Report met National Environmental Policy Act ("NEPA") procedural requirements, *see* 42 U.S.C. § 4321 *et seq.*,[1] and the Forest Service's substantive conclusions are not arbitrary or capricious.

## II. The Project Is Consistent with the Forest Plan and Does Not Improperly Tier to the National Fire Plan

The Forest Plan prohibits "timber production" in areas deemed "unsuitable timber land." The Project targets hazardous fuels reduction, and does not involve "timber production," which the Forest Plan defines as "[t]he purposeful growing, tending, harvesting, and regeneration of regulated crops of trees to be cut into logs, bolts, or other round sections for industrial or consumer use." *See Native Ecosystems Council v. United States Forest Serv.*, 428 F.3d 1233, 1247 (9th Cir.2005).

The Project is also not improperly tiered to the National Fire Plan. The FEIS explicitly acknowledges the documents to which it is tiered; the National Fire Plan is not among them. Finally, the Project is consistent with the Forest Plan, which recognizes the need to "manage fuels by reducing ... [them] to acceptable levels." The district court did not err in granting summary judgment to the Forest Service on this issue.

## III. The Forest Service's Species Viability Findings are Not Arbitrary and Capricious

■ Under the APA, agency decisions will only be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Forest Service determined in the FEIS that the Project would not endanger the viability of the Black-backed Woodpecker, the American Pine Marten, or the Northern Goshawk. To support these determinations, the Forest Service cited published studies conducted by qualified scientists and relied on its own wildlife biologist's evaluation. The Forest Service explained how it reached each of the viability conclusions, and discussed the associated issues.

The species viability information and analysis in the FEIS demonstrate the Forest Service took the "hard look" at possible environmental impacts required by NEPA. *See Lands Council v. McNair*, 537 F.3d 981, 1000–01 (9th Cir.2008) (en banc). Likewise, the FEIS demonstrates that the Forest Service's determination that the Project is consistent with the Forest Plan's provision to "maintain habitat for current wildlife populations," as required by the National Forest Management Act, 16 U.S.C. § 1604(i), was not a clear error in judgment. *See McNair*, 537 F.3d at 994. The Forest Service's viability conclusions are not arbitrary and capricious.

---

1. In this way, the Soils Report is materially different from the supplemental information reports in *Idaho Sporting Congress v. Alexander*, 222 F.3d 562 (9th Cir.2000).

IV. The Forest Service's Reliance on the Region One Soil Quality Standards Is Not Arbitrary and Capricious

■ The Project applied the Region One Soil Quality Standards ("R1–SQS") to comply with NFMA's requirement to harvest timber only where soil conditions will not be irreversibly damaged. *See* 16 U.S.C. § 1604(g)(3)(C). The Forest Service's decision to rely on R1–SQS is not arbitrary and capricious in these circumstances. The FEIS explains that the 15% limit indicates the point at which additional negative effects of soil disruption become difficult to mitigate or restore. This conclusion is supported by citations to published studies. Giving appropriate deference to the Forest Service's expertise in these matters, *see McNair*, 537 F.3d at 993, we conclude the Forest Service did not make a clear error of judgment by relying on R1–SQS, and affirm the district court's decision on this issue.

AFFIRMED.