**E.I. DU PONT DE NEMOURS & COMPANY (CHESTNUT RUN), Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Walter Slaughter, Intervenor.**

**No. 82–3363.**

United States Court of Appeals, Third Circuit.

Argued March 16, 1984.

Resubmitted May 14, 1984.

Decided May 14, 1984.

Rehearing and Rehearing In Banc Denied May 15, 1984.

Peter D. Walther, Robert H. Young, Jr., James A. Matthews, III, Drinker, Biddle & Reath, Philadelphia, Pa., for petitioner; John F. Lawless, Wilmington, Del., of counsel.

Elliott Moore, Deputy Associate Gen. Counsel, William A. Lubbers, Gen. Counsel,

---

**4.** Because of the view we take, we grant the various motions before us asking us to supple-

ment the briefs and appendices.

John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Joseph Lurie, Morris Bernstein, Philadelphia, Pa., for intervenor.

Before ADAMS and GARTH, Circuit Judges and ACKERMAN, District Judge.*

## OPINION OF THE COURT

PER CURIAM.

On December 29, 1983, this Court filed a majority opinion enforcing the order of the National Labor Relations Board, which order required the reinstatement of Intervenor Walter Slaughter by Petitioner Du Pont. *NLRB v. Du Pont de Nemours & Co.*, 724 F.2d 1061 (3d Cir.1983). The NLRB had found that Du Pont committed an unfair labor practice when it discharged Slaughter, a non-union employee, for insisting that a coworker witness accompany him to any interview with management which might lead to disciplinary action.

Du Pont subsequently filed a motion for panel rehearing and rehearing en banc on February 1, 1984. Before ruling upon those motions, this Court, on February 7, 1984, ordered that an Answer be submitted by the NLRB by February 7, 1984. In particular, the Court asked that the Board address the question of whether *Meyers Industries, Inc.*, 268 N.L.R.B. No. 73, 115 L.R.R.M. 1025 (1984), decided subsequent to this Court's opinion of December 29, 1983, required any different result.

In lieu of an Answer, the NLRB moved, on February 17, 1984, that the Court's filed opinion be vacated and the matter remanded to the Board for further consideration. The NLRB stated that it had pending another case presenting similar issues, and that it was giving additional thought to the questions involved. This Court held the Board's motion to vacate and remand in abeyance, and again ordered an Answer on the petition for rehearing from the NLRB.

That Answer was filed on March 19, 1984. Although the NLRB argued in its Answer that *Meyers* did not affect the analysis of the present case, it renewed its request for a remand for further consideration.

It was at this stage that Slaughter, the discharged employee, sought to intervene and to file an Answer to Du Pont's petition for rehearing. On March 30, 1984, intervention was granted, and an extension of time to file a response to the rehearing petition was granted. We have now received and considered all responses, including the Answer of Intervenor Slaughter. For the reasons stated below, we grant the NLRB's motion for remand.

 The NLRB does not have the automatic right to withdraw its petition for enforcement at will, and "permission to withdraw must rest in the sound discretion of the court, to be exercised in light of the circumstances of the particular case." *Ford Motor Co. v. NLRB*, 305 U.S. 364, 370, 59 S.Ct. 301, 305, 83 L.Ed. 221 (1939). Nor is it the responsibility of the courts of appeals to ensure academic consistency in the Board's decisions. *NLRB v. Deaton, Inc.*, 502 F.2d 1221, 1228 (5th Cir.1974) (denying motion for remand made by employer). In the present case, however, the Board's decision resulted in substantial development in the construction of § 7 of the Act. It is in this context that we view the Board's contention that:

> the public interest and the interests of the parties would be better served by its considering ... this case together with the other case posing related questions, to issue decisions comprehensively addressing the questions raised in this area, thereby allowing for more effective judicial review.

Motion of the NLRB, February 16, 1984, at 1–2. Mindful of the deference owed the Board's special expertise in interpreting

---

* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

the Act,[1] we believe that our discretion is best exercised by postponing further judicial involvement until we have been informed of a comprehensive adjudication by the NLRB.[2] Thus, we grant panel rehearing: the NLRB's motion to remand this case is granted. Accordingly, our previous opinion, reported at 724 F.2d 1061, will be vacated.

HAROLD A. ACKERMAN, District Judge, dissenting.

I am somewhat dismayed by the decision of the other members of this panel to remand this matter to the Board for further proceedings. In a highly unusual if not unprecedented action, the National Labor Relations Board (Board) has sought to reconsider one of its own decisions *after* enforcement had been granted by a Court of Appeals—not because justice requires that some defect in the record be corrected, and not because of a change in Supreme Court or Board precedent, but instead simply because the Board has pending before it an unnamed case "which has caused the Board to give further consideration to the questions presented in the instant case." The Board suggests that somehow "the public

interest and the interests of the parties would be better served by the Board's further reconsideration of the issues presented in this case" together with the other case assertedly "posing related questions." I am unable to determine how anyone's legitimate interests could be served by such a remand, and I therefore dissent.

The *per curiam* opinion's recitation of the procedural history of this case since the filing of the panel's opinions omits one key fact. It initially appeared that the Board's motion to remand was based upon its recent opinion in *Meyers Industries, Inc.*, 268 N.L.R.B. No. 73 (1984). In Meyers, the Board reversed its previous opinion in *Alleluia Cushion Co.*, 221 N.L.R.B. 999 (1975), and held that the lone activity of a non-union employee in refusing to drive an unsafe vehicle for his employer and in reporting the safety violation to governmental authorities was not "concerted activity" protected under section 7, despite its benefit to other workers. When ordered by this panel to address the question of "why the decision in [*Meyers*] does not require a result different from that in the panel decision," the Board clarified its position by

---

**1.** As we read the dissenting opinion, its conceptual linchpin is the notion that the role of Board expertise ends when judicial review begins. The dissent does not contest that courts must generally defer to the Board's expert application of the Act to a particular case. Rather, the dissent seems to contend that once a case is brought before the courts for review, deference is no longer owed to any additional insight from the Board. We know of no authority to support this view, nor can we square it with the expansive language used by the Supreme Court to emphasize the broad discretion vested in the Board by the Act. *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975) ("The responsibility to adapt the Act to changing patterns of industrial life is entrusted to the Board"). *See also NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963).

While we agree that a proper concern for judicial economy demands critical examination of requests for remand when a court of appeals has already decided a case, we nonetheless believe that the Board's expertise informs its judg-

ment that a case requires reconsideration in much the same fashion as it informs the Board's prior decision on the merits of that case. Indeed, it would appear that the Supreme Court implicitly recognized the ongoing significance of Board expertise when it remanded Woodcraft Division, *Georgia Kraft Co. v. NLRB*, 696 F.2d 931 (11th Cir.1983), *vacated in part*, — U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984), to permit the Board to reconsider the case after the Eleventh Circuit had enforced the Board's order. Thus we are not persuaded that the deference required of us evaporates entirely after a Board decision is submitted to a court for review.

**2.** It is noteworthy that a remand may very well lessen the ultimate expenditure of judicial resources necessary to resolve the § 7 issue in this case. Since our previous opinion enforcing the Board arguably conflicted with the Ninth Circuit's decision in *E.I. Du Pont de Nemours & Co. v. NLRB*, 707 F.2d 1076 (9th Cir.1983), the Supreme Court might have been impelled to grant certiorari in order to announce uniform law on the subject. By remanding, we provide the Board an opportunity to articulate an approach that could avoid intercircuit conflict and obviate the need for Supreme Court review.

responding unequivocally that, in its view, the change of position reflected by *Meyers* would have no effect on the outcome of this case. Specifically, the Board stated that

the panel in this case recognized that under *Weingarten* "the proper focus in evaluating the requirement of concertedness in this context should be on the literal nature of the activity that would take place if the employee's request was granted" (sl. op. p. 11). If the request in the instant case had been granted, Slaughter and a fellow employee would have together confronted the company as it considered whether to discipline Slaughter. The conduct would involve two employees and would clearly be concerted.

Thus, contrary to the Company's repeated assertions the concertedness found here is not "fictional" or "constructive." A request for the assistance of another employee is protected because, as this Court recognized in *Hugh H. Wilson Corp. v. NLRB*, 414 F.2d 1345, 1347 (1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115, quoting *Mushroom Transportation Co. v. NLRB*, 330 F.2d 683, 685 (3d Cir.1964): "To protect concerted activities in full bloom, protection must necessarily be extended to 'intended, contemplated or even referred to' group action ... less employer retaliation destroy the bud of employee initiative aimed at bettering terms of employment and working conditions."

Answer of the Board, March 19, 1984, at 2–3.

Further, anticipating the decision by the Supreme Court in *NLRB v. City Disposal Systems, Inc.*, — U.S. ——, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984), the Board distinguished that line of cases as well, stating

This Court's decision in *NLRB v. Northern Metal Co.*, 440 F.2d 881 ([3 Cir.] 1974), is irrelevant for the same

reason. That case involved the Board's holding that an individual employee's conduct in invoking the collective bargaining agreement is concerted. The propriety of that holding is before the Supreme Court in *NLRB v. City Disposal*, No. 83–960; argued November 7, 1983). Since it involves another sort of constructive concertedness rationale, however, it is no more involved here than is *Alleluia*.

Thus, as to any argument that a change in controlling authority requires a remand, the Board has answered its own motion and provided a conclusive basis for its denial: it does not consider subsequent decisions by the Board or the Supreme Court to affect either its previous opinion in *E.I. duPont de Nemours*, 262 N.L.R.B. 1018 (1982), or this Court's enforcement thereof.

As the sole basis for its motion to remand, the Board states that it presently has before it another case,[1] yet undecided, which has caused it to reconsider the issues it previously decided in this case. A remand in this posture and on that basis is jurisprudentially improper. The Board cites but one case in support of its motion, and that is *Ford Motor Company v. N.L.R.B.*, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1938).

In *Ford Motor Company*, the Court upheld the Sixth Circuit's grant of the Board's motions for remand in cross-petitions for review and enforcement. These motions were made pursuant to section 10(e) and (f) of the National Labor Relations Act (Act), 29 U.S.C. § 160(e) and (f). Section 10(e) of the Act provides, in pertinent part, that upon petition by the Board for enforcement of one of its orders:

If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court

---

1. The Board has provided no hint as to the facts or nature of this second case, making it extremely difficult to evaluate its motion to remand.

may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record.

Section 10(f), in turn, provides that upon petition for review of a Board order by an aggrieved party, "the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section...."

The Board's motions to remand in *Ford Motor Company* came shortly after the filing of the petitions for review and enforcement, and before a decision by the Sixth Circuit on the merits of the petitions. These motions were made in the wake of the Supreme Court's decision in *Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129 (1938), on the grounds that certain defects in the record, both procedural and substantive, were in need of correction. 305 U.S. at 366, 375, 59 S.Ct. at 307. The Court upheld the Sixth Circuit's exercise of discretion in granting the Board's motion, although even in those circumstances it was "unable to conclude that the Board has an absolute right to withdraw its petition at its pleasure. *Id.* at 370, 59 S.Ct. at 305. Writing for the Court, Chief Justice Hughes states that

[i]t is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points.

Referring to the reasons advanced for remand in the case before it, Chief Justice Hughes noted that

[t]he application for remand in this instance was not on frivolous grounds or for any purpose that might be considered dilatory or vexatious. Petitioner had raised a serious question as to the validity of the findings and order. The Board properly recognized the gravity of the contention and sought to meet it by voluntarily doing what the court could have compelled. That was in the interest of a prompt disposition, and whatever delay has resulted is due to petitioner's resistance to that course.

*Id.* at 375, 59 S.Ct. at 307.

*Ford Motor Company* can provide no support for a remand here. Not only does the Board's motion come after a decision on the merits by this court, its arguments supporting remand have nothing whatsoever to do with the reasons contemplated by either section 160(e) and (f) or the *Ford Motor Company* opinion. There is no suggestion by the Board that the record in this proceeding is in any way flawed and in need of correction, *see, e.g., Swinick v. NLRB,* 528 F.2d 796 (3d Cir.1975), nor is there any contention that a change in the underlying factual circumstances requires the Board's consideration. *See, e.g., C–B Buick, Inc. v. NLRB,* 506 F.2d 1086 (3d Cir.1974). Indeed, the Board does not seek to take further evidence or make additional findings for any purpose.

Remand at this stage of the proceedings runs counter to the interest in prompt disposition of cases which Chief Justice Hughes noted in *Ford Motor Company,* 305 U.S. at 375, 59 S.Ct. at 307. The charging party in this action, Mr. Slaughter, has been waiting since 1978 to receive the benefits of a remedy awarded him, successively, by an Administrative Law Judge, the Board, and this panel. The Board's request to re-litigate the very issues which have already been ruled upon three times—with a uniform result in each—cannot in these circumstances be considered anything other than dilatory.

Granting the Board's motion at this juncture also significantly undermines the principle of finality. In *International Union of Mine, Mill and Smelter Workers v. Eagle-Picher Mining & Smelting Co.,* 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945), the Court considered the appropriateness of the Second Circuit's denial of a request by the Board to vacate an enforcement order and remand the matter for further consideration. Affirming the Second Circuit, the Court determined that section

10(e) of the Act applies only prior to a decision on the merits by the courts of appeals. When the record has been made and is finally submitted the court for action, the judgment under the terms of the Act " 'shall be final.' " *Id.* at 339, 65 S.Ct. at 1168 quoting section 10(e) of the Act, 29 U.S.C. § 160(e). Such a judgment is to have all the qualities and attributes of any other decree entered in a litigated cause upon a full hearing, and is subject to review by the Supreme Court on certiorari. *Id.* The Court noted that to permit remand after a decision on the merits by the Court of Appeals would mean that the Board could, at any time, however remote, and for any reason which might be satisfactory to the Board, recall the proceeding from the Court of Appeals "and start afresh as if an enforcement decree had never been entered." *Id.* at 340, 65 S.Ct. at 1168. The Court stated that

> Finality to litigation is an end to be desired as well in proceedings in which an administrative body is a party as in exclusively private litigation. The party adverse to the administrative body is entitled to rely on the conclusiveness of the decree entered by a court to the same extent that other litigants may rely on judgments for or against them....
>
> \* \* \* \* \* \*
>
> ... We have allowed the Board great latitude in devising remedies which it deems necessary to effectuate the purposes of the Act. But it is not we who essay to interfere with the discretion of an administrative body; it is the Board that is seeking to vacate a court order. The Board has exercised its discretion and devised a remedy.... What the Board complains of is that it is not per-

mitted to exercise its discretion a second time or any number of times it may choose.

*Id.* at 340–41, 65 S.Ct. at 1168–69. *See also NLRB v. Mastro Plastics*, 261 F.2d 147, 148 (2d Cir.1958).

Here it appears that the new members of the Board seek to exercise their jurisdiction over not only those cases which come before them in the normal course but also those decided by their predecessors. This, of course, is patently improper. As Judge Godbold said in a slightly different context:

> The personnel and policies of administrative agencies are subject to constant change. Especially in an area as fraught with technical distinctions and as dependent on factfindings as the employee-independent contractor dichotomy, we should decline to interfere with a Board decision reached through orderly processes under proper legal standards and supported by substantial evidence. To intervene at this point would work against the essential policy of the Act, encouraging parties to delay compliance with Board orders for as long as possible in the hope of finding support in later Board decisions and of securing a *locus poenitentiae* through the intervention of a court of appeals.

*NLRB v. Deaton*, 502 F.2d 1221, 1228 (5th Cir.1974), *cert. denied*, 422 U.S. 1047, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975).[2]

For these reasons, I would deny the Board's motion to vacate the panel opinion and to remand to the Board for further proceedings.

---

**2.** While I agree that some deference is owed to the Board's determinations due to its special function under the Act, *see NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975), it is equally true that "[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia...." *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). Reviewing courts are not " 'to stand aside and rubber stamp' Board determinations that run contrary to the language or tenor of the

Act...." *NLRB v. J. Weingarten, Inc.*, 420 U.S. at 266, 95 S.Ct. at 968 quoting *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). While respect for the Board's function necessarily continues even after judicial review begins, here the per curiam opinion's deference to the Board's request for a remand is tantamount to walking into a dark passageway. Under the circumstances of this case, and taking into consideration the issue of fairness, this is not a journey that I am prepared to embark upon.