Walter J. SLAUGHTER, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

E.I. DuPont DeNemours & Company, Intervenor.

No. 88–3554.

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1989.

Decided May 30, 1989.

As Amended Aug. 14, 1989.

Joseph Lurie, Clyde W. Summers (argued), Galfand, Berger, Lurie and March, Philadelphia, Pa., for petitioner.

Aileen A. Armstrong, Peter D. Winkler, Charles P. Donnelly, Jr. (argued), N.L.R.B., Washington, D.C., for respondent.

Peter D. Walther (argued), Robert J. Bray & Associates, Philadelphia, Pa. and John F. Lawless, E.I. duPont deNemours and Co., Wilmington, Del., for intervenor.

Before HUTCHINSON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

Petitioner Walter J. Slaughter (Slaughter) seeks review of a second supplemental order of the National Labor Relations Board (Board) dismissing an unfair labor practice charge against E.I. DuPont de Nemours & Co. (DuPont). Slaughter's unfair labor practice charge has already been the subject of three published opinions by this Court. *E.I. Du Pont de Nemours & Co. v. NLRB,* 724 F.2d 1061 (3d Cir.1983) (*DuPont I*); *E.I. Du Pont De Nemours & Co. v. NLRB,* 733 F.2d 296 (3d Cir.1984) (*DuPont II*); and *Slaughter v. NLRB,* 794 F.2d 120 (3d Cir.1986) (*DuPont III*). We have jurisdiction pursuant to 29 U.S.C.A. § 160(f) (West 1973).

Slaughter worked for DuPont as a lab technician at a non-union facility.[1] In October 1978, he was placed on probation for excessive absenteeism. On November 15, 1978, he posted a "Notice to Employees" on the company bulletin board stating that a petition for a representation election had been filed with the Board. In fact, no such petition had ever been filed. The Board had erroneously sent Slaughter notice after he had requested information on union organizing. A supervisor observed Slaughter's action and directed him to remove the notice. Slaughter refused.

Later that morning, the supervisor told Slaughter he wanted to discuss the incident. Slaughter stated he would discuss the matter only in the presence of a fellow employee. The supervisor refused to talk to Slaughter about the incident in the presence of this employee. Slaughter also refused to discuss the incident in the presence of the supervisor's choice of a "witness." After repeatedly refusing to participate in the interview without a fellow employee of his choice, Slaughter was suspended indefinitely and sent home. Over the next several days, DuPont representatives continued to ask Slaughter for a meeting. On November 24, 1978, Slaughter met with a different supervisor alone.[2] He was discharged five days later.

The Board initially held Slaughter's discharge was an unfair labor practice. In doing so, it relied on its decision in *Materials Research Corp.,* 262 N.L.R.B. 1010 (1982). *Materials Research* was itself an extension to a non-union setting of the Supreme Court's holding in *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 266–67, 95 S.Ct. 959,

---

1. For a more detailed description of the facts, see *DuPont I,* 724 F.2d at 1063–64.

2. Apparently Slaughter finally met with a supervisor alone. The Board did not make a finding regarding the significance of that meeting, but premised its order on its conclusion that "Slaughter was discharged solely for his refusal to meet with [DuPont] to discuss the posting incident unless a coemployee was present to serve as a witness." 289 NLRB No. 81, slip op. at 3. The Board's general counsel, who sought an order that Slaughter was improperly discharged, had stipulated that this was the sole issue. The Board also noted:

> Our finding that an employee in the nonunion setting does not enjoy the right to insist on the presence of a fellow employee at an investigatory interview should not be read as implying that an employee enjoys no protected right simply to *ask* for the presence of a fellow employee at such an interview. The mere act of making such a request in no way impairs the employer interests involved here and thus we would not need to strike the balance as we have done on the facts presented in this case.
> *Id.* at 12 n. 15 (emphasis in original).

968–69, 43 L.Ed.2d 171 (1975). In *Weingarten,* the Supreme Court held that § 7 of the National Labor Relations Act (the Act) protects an employee's right to refuse to submit to an investigatory interview without a union representative present. We enforced the Board's original order in *DuPont I.* At its request, however, we vacated *DuPont I* and remanded for reconsideration. *DuPont II,* 733 F.2d at 298.

Thereafter, in *Sears, Roebuck & Co.,* 274 N.L.R.B. No. 55 (1985), the Board overruled *Materials Research.* It held that the Act "compels" the conclusion that *Weingarten* does not extend to non-union employees. On remand after *DuPont II,* the Board followed *Sears* and dismissed Slaughter's complaint. On appeal, we adhered to our prior holding that *Materials Research* was a permissible interpretation of the Act and refused to sustain the Board's action. *DuPont III,* 794 F.2d at 128. We noted that if the Board had said in *Sears* that the Act "should not" be interpreted to extend *Weingarten* to a non-union setting, "we would have a very different case before us." *Id.* at 125. Because the Board instead held that the Act "could not" be so extended, in that such a construction was unreasonable and in fact "compelled" the opposite conclusion, we concluded that its decision conflicted with our holding in *DuPont I* that *Materials Research*'s extension of *Weingarten* was "at least permissible." *Id.* at 128. We again remanded to the Board without deciding whether "the interpretation of the Act announced in *Sears* is a permissible one." *Id.*

On remand, the Board overruled *Sears* and concluded instead that *Weingarten* "should not" be extended to non-union employees. It found that, absent an exclusive collective bargaining representative, an employer may discipline an employee who conditions his willingness to discuss potential disciplinary matters on the presence of a fellow employee of his choosing. Accord-

ingly, the Board reaffirmed its dismissal of Slaughter's unfair labor practice complaint.

The Board now contends that this construction "represents a fair and equitable accommodation between the competing concerns of employees and employers." Brief for Respondent at 13. The issue before us is whether the Board's conclusion represents a reasonable construction of § 7 of the Act. That section reads:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

National Labor Relations Act, 29 U.S.C.A. § 157 (West 1973). We must enforce the Board's order so long as "the Board's construction ... is at least permissible under [the Act]." *Weingarten,* 420 U.S. at 266–67, 95 S.Ct. at 968–69.[3]

The scope of our review over permissible Board constructions of the Act is highly deferential. The Board, with its considerable expertise in labor relations, is better equipped than this Court to determine what reasonable interpretation of § 7 of the Act will best promote its purpose of insuring employees' rights to joint action and collective bargaining, as well as that of promoting industrial peace. Other conclusions may be possible, perhaps even reasonable. However, the Board is the authoritative expert on what will best further the purpose of § 7 of the Act. It has decided against Slaughter on a reasonable interpretation of the Act and we must defer to its judgment in that respect.[4]

---

3. In *DuPont III,* we recognized that "[i]t is the Board's duty to choose amongst permissible interpretations of the Act to best effectuate its overarching goals." *DuPont III,* 794 F.2d at 125.

4. In its opinion the Board distinguishes *Weingarten* because of its union setting. Slaughter questions the validity of that distinction, citing, *inter alia, NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962)

**14**

Accordingly, we will deny Slaughter's petition for review.

(§ 7 broad enough to protect non-unionized walkout due to frigid working conditions without first making specific demands to employer to remedy them). We reject that argument. Although no union was certified in *Washington Aluminum,* the activity the employees engaged in plainly comes within the rights § 7 protects. *See Meyers Indus., Inc.,* 281 N.L.R.B. No. 118, (1986) (collective activities with others and not solely individual actions constitute concerted activity for purposes of § 7 of Act). Moreover,

*Weingarten* itself, in affirming the Board's holding that § 7 embodies an employee's statutory right to refuse a disciplinary interview without a union representative present, refers to the Board's construction as permissible, not mandatory. "We do not sit to substitute our wisdom on the subject of labor relations for that of the Board, ... nor to ensure 'academic consistency' in its interpretation of the Act[.]" *Slaughter v. NLRB,* 794 F.2d 120, 124–25 (3d Cir.1986).